**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 26, 2025

<u>***Via File & ServeXpress***</u>
Andrew S. Dupre, Esquire
Akerman LLP
222 Delaware Avenue, Suite 1710
Wilmington, DE 19801

<u>***Via U.S. Mail***</u>
M7 Global Innovation Group
Corporation
c/o A Registered Agent, Inc.
8 The Green, Suite A
Dover, DE 19901

M7TecGroup Ltd. Co.
c/o Registered Agents Inc.
5900 Balcones Drive, Suite 100
Austin, TX 78731

Convergent Innovation Technology
Holdings, Inc.
c/o A Registered Agent, Inc.
8 The Green, Suite A
Dover, DE 19901

M7 Energy Development Corporation
c/o A Registered Agent, Inc.
8 The Green, Suite A
Dover, DE 19901

RE: ***In Re Petition for Dissolution of M7 Energy Development Corporation and Convergent Innovation Technology Holdings, Inc.,***
Civil Action No. 2024-1135-MTZ

Dear Counsel and Litigants:

I write to address the petitioners' desire to close this case. In short, the petitioners have more work to do.

## I.     Background

This matter began in fits and starts.  Petitioners EOR Advanced Energy, LLC and EOR Technology, LLC's (together, "Petitioners") operative petition (the "Amended Petition") advances two claims.  Count I seeks a judicial dissolution of M7 Energy Development Corporation ("M7EDC") and Convergent Innovation Technology Holdings, Inc. ("CIT," and collectively with M7EDC, the "Corporations") under 8 *Del. C.* § 273.[1]  The Corporations are joint ventures between Petitioners and respondent M7 Global Innovation Group Corporation ("M7GIG" or "Respondent," and with Petitioners, the "Parties").[2]  The Corporations' equity is split evenly between Petitioners on the one hand and Respondent on the other.[3]  So Petitioners sought dissolution under Section 273, which reads in relevant part:

> (a) If the stockholders of a corporation of this State, having only 2 stockholders each of which own 50% of the stock therein, shall be engaged in the prosecution of a joint venture and if such stockholders shall be unable to agree upon the desirability of discontinuing such joint venture and disposing of the assets used in such venture, either stockholder may, unless otherwise provided in the certificate of incorporation of the corporation or in a written agreement between the

---

[1] Docket Item ("D.I.")  43 ¶¶ 39–42 [hereinafter "AP"].

[2] AP ¶ 1; *id*. ¶ 8 ("Petitioner EOR Advanced Energy owns 50% of the issued and outstanding shares of stock of M7EDC"); *id*. ¶ 9 ("Petitioner EOR Technology owns 50% of the issued and outstanding shares of stock of CIT."); *id*. ¶ 10 ("Respondent … owns 50% of the issued and outstanding shares of stock of both [Corporations].").

[3] *Id*. ¶¶ 8–10.

stockholders, file with the Court of Chancery a petition stating that it desires to discontinue such joint venture and to dispose of the assets used in such venture in accordance with a plan to be agreed upon by both stockholders or that, if no such plan shall be agreed upon by both stockholders, the corporation be dissolved.[4]

The Amended Petition specifically pleads Respondent did not oppose dissolution.[5]

Count II seeks declaratory judgments relating to the use of certain intellectual property assets affiliated with the Corporations.[6] Count II is against Respondent and Respondent's affiliate M7TecGroup Ltd. ("M7Tec").[7]

On April 23, 2025, Petitioners moved for entry of default judgment against Respondent and M7Tec under Court of Chancery Rules 55(b) and 37(b)(2)(C).[8] On June 6, the Court heard argument on Petitioners' motion for default and delivered a bench ruling (the "Bench Ruling").[9]

---

[4] 8 *Del. C.* § 273(a).

[5] AP ¶ 1 ("Respondent has indicated it does not oppose judicial dissolution of the Corporations."); *id.* ¶ 40 ("While Petitioners and Respondent agree the Corporations should be dissolved, there is a disagreement on whether the Corporations own any assets to distribute as part of a dissolution.").

[6] AP ¶¶ 43–43(d).

[7] AP ¶¶ 43–43(d); *see* D.I. 42.

[8] D.I. 51.

[9] D.I. 66 [hereinafter "Hr'g Tr."].

I raised my view that while the Amended Petition specifically pled Respondent did not oppose dissolution, Section 273 requires a disagreement on dissolution.[10] Some of the most authoritative voices in our history have said so. In *In re Arthur Treacher's Fish & Chips*, Chancellor Marvel explained Section 273 offers the Court a narrow opportunity to effectuate a judicial dissolution when the parties disagree on whether dissolution should occur.[11] "Generally speaking, where a voluntary corporate dissolution is sought to be effected pursuant to the terms of a statute, it is not to be interfered with by the courts in the absence of illegality or actual fraud."[12] Section 273 is designed to alleviate the "fundamental deadlock" when "opposing parties are clearly at loggerheads" about dissolution:[13] "a genuine inability to agree upon the desirability of discontinuing this joint venture is the actual foundation for this action."[14] The Court held that "[o]nce the requirements of

---

[10] Hr'g Tr. 4:23–5:6; *see* AP ¶ 1 ("Respondent has indicated it does not oppose judicial dissolution of the Corporations."); *id.* ¶ 40 ("While Petitioners and Respondent agree the Corporations should be dissolved, there is a disagreement on whether the Corporations own any assets to distribute as part of a dissolution.").

[11] 1980 WL 268070, at *3–4 (Del. Ch. July 1, 1980).

[12] *Id.* at *3.

[13] *Id.*

[14] *Id.* (noting the petitioner "literally met the statutory requirements specified in 8 Del. C. § 273"); *see In re Arthur Treacher's Fish & Chips of Ft. Lauderdale, Inc.*, 386 A.2d 1162, 1163 (Del. Ch. 1978) ("It is petitioner's present purpose to discontinue such alleged joint venture and to dispose of the assets employed in such business activity, while respondent

[Section] 273 are met, the exercise of [its] discretion is limited to a determination of whether or not a bona fide inability to agree exists between the two shareholders."[15]

In *In re Data Processing Consultants, Ltd.*, Chancellor Allen observed, "[t]he procedure envisioned under Section 273 serves the purpose of avoiding a requirement of unanimity for dissolution when there are only two shareholders each holding a half share in a joint venture."[16] In declining to stay the Section 273 dissolution action pending the resolution of a New York breach of fiduciary action, the Court noted "petitioner and respondent are in disagreement as to whether they should dissolve," and reinforced that Section 273 gives an out for a "50% shareholder remain[ing] in a corporate joint venture against his will."[17] More recent cases are in accord.[18]

---

wishes to continue the corporation's business after buying out petitioner's interest in such assets ….").

[15] *In re Arthur Treacher's Fish & Chips*, 1980 WL 268070, at \*4.

[16] 1987 WL 25360, at \*1 (Del. Ch. Nov. 25, 1987).

[17] *Id.* at \*2, \*4.

[18] *In re McKinney-Ringham Corp.*, 1998 WL 118035, at \*2 (Del. Ch. Feb. 27, 1998) ("The dissolution of a corporation under section 273 is proper only where (1) two 50% shareholders, (2) are engaged in the prosecution of a joint venture and (3) are unable to agree upon the desirability of discontinuing such joint venture and disposing of [its] assets ….") (internal quotation omitted); *id.* at \*1 ("I find that MRC is a joint venture corporation, that its two 50% shareholders clearly disagree on the desirability of dissolving the venture and disposing of its assets, and that the Petitioner did not file in bad faith … Thus, all of the requirements for dissolution pursuant to section 273 have been met …."); *In re*

Consistent with *Arthur Treacher's* and *Data Processing*, the seminal statutory treatise *Folk on the Delaware General Corporation Law* informs us that "Section 273 is a narrowly drawn provision that applies only to a joint venture that is owned in equal parts by two stockholders and only when the stockholders disagree as to the desirability of continuing the enterprise."[19]  "Section 273 sets forth three prerequisites for a judicial order of dissolution: (1) that the corporation have two 50% stockholders, (2) that those stockholders be engaged in a 'joint venture' . . . and (3) that the stockholders be 'unable to agree upon the desirability of discontinuing such joint venture and disposing of the assets.'"[20]  Accordingly, "'[o]nce the requirements of § 273 are met,' generally the only question is 'whether or not a bona fide inability to agree exists between the two shareholders.'"[21]  "Section 273 does not specify the manner in which the 'unable to agree' requirement is satisfied.  Thus,

---

*Magnolia Clinical Rsch., Inc.*, 2000 WL 128850, at *1 (Del. Ch. Jan. 3, 2000) ("[Section] 273 is applicable only when there is a rift between two fifty percent (50%) stockholders that prevents agreement on the desirability of dissolving the joint venture and the method for distributing its assets."); *id.* ("Section 273 proceedings are narrow in scope.").

[19] Robert S. Saunders, et al., *Folk on the Delaware General Corporation Law*, § 273.01 at 10-61 (7th ed. 2025-2 Supp.), [hereinafter "Folk"].

[20] *Id.*, § 273.02 at 10-62 (quoting 8 *Del. C*. § 273).

[21] *Folk*, § 273.03 at 10-66 (quoting *In re Arthur Treacher's Fish & Chips*, 1980 WL 268070, at *4).

'a stockholder seeking dissolution pursuant to § 273 may use any competent evidence to prove that the stockholders are unable to agree upon the desirability of discontinuing [the] joint venture and disposing of the assets used in such venture . . . .'"[22]  The seminal treatise by Wolfe and Pittenger is in accord:  "[T]he petitioner must satisfy the Court that the two stockholders are unable to agree upon the desirability of discontinuing the joint venture *and* disposing of its assets."[23]

So, at the hearing on Petitioners' motion for default judgment, I noted the Amended Petition specifically pled the parties agreed to dissolution, and that this seemed to foreclose dissolution under Section 273.

> [COURT]: [T]he language of the statute, the Folk treatise, *Arthur Treacher's*, and *Data Processing* all emphasize that 273 is a narrow statute that has a narrow purpose of dealing with deadlock on the point of dissolution.  In other words, where a 50/50 joint venture cannot agree on whether dissolution should happen.  That's what 273 is for.[24]

---

[22] *Folk*, § 273.02[C] at 10–65 (alteration in original) (quoting *In re Venture Advisers, Inc.*, 1988 WL 127096, at *4 (Del. Ch. Dec. 1, 1988)).

[23] Donald J. Wolfe, Jr. & Michael A. Pittenger, 2 *Corporate and Commercial Practice in the Delaware Court of Chancery* § 10.02[b][2], at 10–7 (2024) (emphasis added); *id*. at 10–5 ("The provisions of Section 273 may be invoked only if the two stockholders are unable to agree upon the desirability of discontinuing the joint venture and disposing of its assets."); *see id*. at 10–5 to 10–6 ("The statute serves to avoid the requirement of unanimity that would otherwise pertain to any dissolution of a corporation having only two equal stockholders.  Nevertheless, Section 273 does not provide the exclusive means of dissolving such a corporation.  ***If the stockholders agree, they may proceed with a voluntary dissolution under Section 275***.") (emphasis added).

[24] Hr'g Tr. 4:8–14.

> …

> I'm not sure that the statute is satisfied where the amended petition says in paragraph 1 that respondent has indicated it does not oppose judicial dissolution of the corporation. So it seems to me you don't need a 273 decree to effectuate the dissolution and that would mean this is not a proper 273 proceeding . . . I'd like to hear your thoughts on all that.[25]

Petitioners' counsel conceded the basis for the Parties' disagreement "has to do with who owns what."[26] After discussion with Petitioners' counsel, the Bench Ruling concluded that where, as Petitioners pled, the sole disagreement between stockholders of a joint venture pertains to the disposition of assets, Section 273 is not satisfied.

> I have taken from the papers the disagreement is about how to slice and dice the IP in the dissolution. And that disagreement is preventing the stockholders of the two corporations from agreeing to dissolve because they can't agree on how to dissolve. But the language of the statute, the requirement of the statute is 'if such stockholders shall be unable to agree upon the desirability of discontinuing such joint venture ….' And it seems to me there's no disagreement there. There's a disagreement about who owns what, but there's no disagreement about the desirability of continuing such joint venture. Which, under the plain language of the statute and *Arthur Treacher's* and some of the other cases would mean that the narrow purpose of 273 is not being served here. You-all are coming to the Court to resolve the question of who

---

[25] *Id*. at 4:24–5:12.

[26] *Id*. at 8:13; *id*. at 9:14–16 ("So, again, I think there's a disagreement on dissolution. And the disagreement stems from who owns what.").

owns what, but there isn't actually disagreement about the desirability
of discontinuing the joint venture.[27]

The Bench Ruling emphasized that since Petitioners disagreed on the disposition of
assets, but agreed on dissolution, granting default judgment as to Count I risked
running afoul of Section 273's statutory requirements.[28]

The Bench Ruling granted a default judgment on the disposition of assets,
specifically "as to Count II, particularly paragraphs 43(a) and (b)," providing the
Corporations an unrestricted right to use the disputed intellectual property.[29] The
Court entered an order consistent with the Bench Ruling, granting the motion for
default judgment in part as to Count II but denying it as to the rest of Count II and
Count I (the "Order").[30] Petitioners received the declaratory judgment they sought
as to the Corporations' use of the intellectual property, but not a dissolution.

On June 10, 2025, Petitioners filed a Motion to Alter Judgment or for
Reargument (the "Motion") under Court of Chancery Rules 59(e) and 59(f).[31] The

---

[27] *Id.* at 7:7–8:3.

[28] *Id.* at 9:24–10:4; *see id.* at 9:3–5 ("[T]he petition says in the first paragraph: 'Respondent has indicated it does not oppose judicial dissolution ....'").

[29] *Id.* at 11:6–8; *id.* at 11:16–19 ("I will enter an order granting default judgment in part on Count II and denying it on Count I for the reasons we've discussed this morning.").

[30] D.I. 57 ¶¶ 2–3 [hereinafter "Order"].

[31] D.I. 59 [hereinafter "Mot."].

Motion asserted the Bench Ruling and the Order misapprehended the statutory requirements for dissolution under 8 *Del. C.* § 273.[32] The Motion claimed "dissolution can be granted under Section 273 even if there is no disagreement as to dissolution, as long as there is disagreement regarding the disposition of the assets …."[33]

Petitioners filed their certificate of service over a month later, on July 14, at which point the Court could take the Motion under advisement.[34] Three weeks later, Petitioners asked the Court for "expedited assistance" on the basis that "Petitioners risk losing a potential $50 million business deal" if the Motion was not resolved by August 8.[35] That same day, I told the parties the Motion was denied "[b]ecause the joint venturers here agree the venture should be discontinued," and that an additional explanation was forthcoming.[36] I continued preparing a ruling explaining my view that I properly denied Petitioners' request for a Section 273 dissolution where

---

[32] Mot. ¶¶ 1–4, 7–16.

[33] *Id.* ¶ 4.

[34] D.I. 61.

[35] D.I. 62.

[36] D.I. 63; *id.* ("I continue to believe the plain text of 8 *Del. C.* § 273 requires disagreement as to both the desirability of discontinuing a joint venture, and disposing of the venture's assets.").

Petitioners pled the joint venturers agreed to dissolution.[37] But then Petitioners

withdrew the Motion.[38]

---

[37] Contrary to Petitioners' first argument (Mot. ¶ 7), Section 273's term "and" is "presumed to be conjunctive—especially when 'or' is used in the same section disjunctively," as it is in Section 273. *Silverman v. Silverman*, 206 A.3d 825, 832 n.35 (Del. 2019) ; *accord Concord Steel, Inc. v. Wilmington Steel Processing Co.,* 2008 WL 902406, at *7 (Del. Ch. Apr. 3, 2008) ("Usually, one would interpret 'and' only in the conjunctive, joining two or more elements in a list and requiring all of those elements.").

The Motion selectively quoted *Weinberg v. Waystar, Inc.* in support of this argument. *Compare* Mot. ¶ 7 ("As a matter of statutory construction, the term 'and' 'may be interpreted conjunctively or disjunctively…. [C]ourts interpret 'and' in the disjunctive sense to prevent an absurd or unreasonable result….'") (quoting *Weinberg v. Waystar, Inc.*, 294 A3d 1039, 1045 (Del. 2023)) *with Weinberg*, 294 A3d at 1045 ("*First*, 'and' may be interpreted conjunctively or disjunctively. Many legal authorities support Weinberg's suggestion that *ordinarily 'and' is conjunctive, while 'or' is disjunctive*, and that courts will construe each word accordingly, absent strong reasons to break from the general rule. *When courts depart from the ordinary, conjunctive meaning of 'and,'* and construe it, instead, as a disjunctive 'or,' *it is often because they acknowledge that sloppy drafting sometimes confuses the two*. Accordingly, *courts interpret 'and' in the disjunctive sense to prevent an absurd or unreasonable result, or to give effect to the parties' intent and reasonable expectations*. In these cases, courts discern the meaning of the word from the context of the provision and the contract as a whole. In short, although 'and' typically bears a conjunctive meaning, that presumption can be overcome by context.") (emphasis added) (footnotes omitted). The Court expects candor from practitioners at all times and does not appreciate a submission that selectively quotes an opinion, especially one from the Delaware Supreme Court.

Second, the Motion looked to a pull quote summarizing Section 273(a)'s requirements disjunctively. Mot. ¶ 9. *In re Coffee Assocs. Inc.* introduces Section 273(a) conjunctively, citing *Data Processing*, then goes on to summarize it disjunctively. 1993 WL 512505, at *3 (Del. Ch. Dec. 3, 1993) (citing *In re Data Processing Consultants, Ltd.*, 1987 WL 25360, at *1). I read that text as a whole to require deadlock as to both dissolution and disposal of assets. But the casually disjunctive summary has been repeated. *E.g.*, *Haley v. Talcott*, 864 A.2d 86, 94 (Del. Ch. 2004) ("Section 273 *essentially* sets forth three pre-requisites for a judicial order of dissolution: 1) the corporation must have two 50% stockholders, 2) those stockholders must be engaged in a joint venture, and 3) they must

be unable to agree upon whether to discontinue the business or how to dispose of its assets.") (citing *In re Coffee Assocs.*, 1993 WL 512505, at *3 (emphasis added)).

*Haley* and many of its progeny looked to Section 273 only to resolve claims under 6 *Del. C.* § 18-802, which speaks to a general inability to carry out the business of an LLC and does not specify disagreement as to dissolution and disposition of assets. *See* 6 *Del. C.* 18-802 ("On application by or for a member or manager the Court of Chancery may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with a limited liability company agreement."); *Haley*, 864 A.2d at 89; *In re: GR BURGR, LLC*, 2017 WL 3669511, at *1, *6, *8 (Del. Ch. Aug. 25, 2017); *Achaian, Inc. v. Leemon Fam. LLC*, 25 A.3d 800, 802, 811 (Del. Ch. 2011); *Vila v. BVWebTies LLC*, 2010 WL 3866098, at *8 (Del. Ch. Oct. 1, 2010); *Homer C. Gutchess 1998 Irrevocable Tr. v. Gutchess Cos., LLC*, 2010 WL 718628, at *1 (Del. Ch. Feb. 22, 2010).

None of the Section 273 cases built on *Haley* excused the requirement to disagree on dissolution. *See Feldman v. YIDL Tr.*, 2018 WL 1151797, at *2 (Del. Ch. Mar. 5, 2018) (explaining "the prerequisites for a judicial order of dissolution under Section 273 have been met here. [Petitioner] and the [respondent] indisputably have been engaged in a joint venture …, [and] there is no dispute that they have been unable to agree as to the continued operation of the Company or how to dispose of its sole asset."); *In re Coffee Assocs., Inc.*, 1993 WL 512505, at *5–6 (granting summary judgment for respondent on a Section 273 claim on the basis the entity was not "a joint venture corporation within the meaning of § 273"); *Matter of Bermor, Inc.*, 2015 WL 554861, at *5 (Del. Ch. Feb. 9, 2015) (granting relief under Section 273 "[b]ecause there is nothing to suggest that the actual foundation for this action is something other than a genuine inability to agree upon the desirability of discontinuing this joint venture") (quotations omitted).

Finally, the Motion asserts that reading the statute to require disagreement as to both the desirability to discontinue the joint venture and the disposition of its assets would result in an "absurd or unreasonable result." Mot. ¶ 10. But as explained above, Delaware law has consistently recognized Section 273 is designed to serve a narrow purpose, making a conjunctive textual interpretation appropriate, not absurd. And here, the Parties already have a court order dictating who can use the disputed intellectual property; as that was their only disagreement, presumably that order is helpful in resolving their affairs using other tools in the DGCL toolbox. Order ¶ 2; *see also* Wolfe & Pittenger, *supra* note 23, at 10–5 to 10–6.

[38] D.I. 67.

On August 8, Petitioners wrote alerting the Court that "Certificates of Dissolution were filed with the Delaware Secretary of State on August 8, 2025 on behalf of" the Corporations (the "Letter").[39] Petitioners' Letter says the Corporations were dissolved "[i]n light of the Court's determination that the joint venturers agree on dissolution."[40] The Letter asked the Court to enter Petitioners' proposed order voluntarily dismissing their claim for dissolution under Court of Chancery Rule 41(a)(2) and closing the case (the "Proposed Order").[41] The Proposed Order states the Corporations were dissolved "following the Court's August 4, 2025 ruling."[42] No motion accompanied Petitioners' request for relief.

## II.    Analysis

I cannot dismiss Count I, or close this case, on the content or form Petitioners have submitted.

---

[39] D.I. 64. The certificates of dissolution stated dissolution was "duly authorized by unanimous consent of Stockholders," and that "[t]he date the dissolution was authorized is December 23, 2024." D.I. 64 Exs. 1, 2.

[40] D.I. 64.

[41] D.I. 64; D.I. 65.

[42] D.I. 65 at 1.

As to content:  Petitioners' statement that the Court "determine[ed] the joint venturers agree on dissolution" is an aggressive mischaracterization.[43]  To be crystal clear, the Court made no such determination, on August 4 or at any other time. Petitioners pled the parties agreed to dissolution,[44] and Respondents did not answer the Amended Petition, deeming those allegations admitted.[45]  Given that admission, I declined to enter a default judgment on Petitioners' claim for dissolution.[46]  I did not make any factual determinations.

Petitioners' Proposed Order also contains a multitude of factual representations for adoption by the Court as to the Corporations' payment of franchise taxes, dissolution, compliance with 8 *Del. C.* § 281(b), and the Corporations' "final liquidating distribution of all remaining non-monetary assets in

---

[43] D.I. 64.

[44] AP ¶ 1 ("Respondent has indicated it does not oppose judicial dissolution of the Corporations."); *id.* ¶ 40 ("While Petitioners and Respondent agree the Corporations should be dissolved, there is a disagreement on whether the Corporations own any assets to distribute as part of a dissolution.").

[45] *Hauspie v. Stonington P'rs, Inc.*, 945 A.2d 584, 586 (Del. 2008) ("The effect of a default in answering [] is to deem admitted all the well-pleaded facts in the complaint.  A plaintiff is only entitled to a default judgment if those facts, taken together, state a claim upon which relief can be granted.") (footnote omitted).

[46] Hr'g Tr. 11:16–22.

kind to the stockholders jointly."[47]  I have no reason to believe or know any of those representations are true, and have reason for skepticism.[48]  I will not adopt them.

As to form:  Petitioners' request for a voluntary dismissal under Rule 41(a)(2) is procedurally deficient.  The Proposed Order states that "Petitioners desire to have Count I voluntarily dismissed and the case closed."[49]  The Proposed Order would (i) dismiss Count I of the Amended Petition under Rule 41(a)(2); (ii) enter judgment as to Count II consistent with the Court's Order on default judgment; (iii) require each party to bear its own costs; and (iv) close the case.[50]  Rule 7 mandates that "a request for a court order must be made by motion."[51]  Petitioners failed to file a motion requesting the relief sought in the Proposed Order, particularly dismissal of Count I under Rule 41(a)(2).  The Court will not consider, much less grant, a request for

---

[47] D.I. 65.

[48] I am skeptical due to Petitioners' selective quotation of the *Weinberg* case, *supra* note 37, and the mischaracterization of my August 4 letter. The representation about distribution of "non-monetary assets" is unclear as to its treatment of the disputed intellectual property. D.I. 65 at 2.  Petitioners secured a default judgment permitting the Corporations to use the disputed IP.  Order ¶ 2.  They did not obtain a judgment as to how that right to use the disputed IP would be handled in dissolution. *Id.* ¶ 3; *see* AP ¶¶ 43(c), (d).

[49] D.I. 65 at 2.

[50] *Id.* ¶¶ 1–4.

[51] Ct. Ch. R. 7(b)(1) ("Except where provided elsewhere, a request for a court order must be made by motion. Unless made during a hearing or trial, a motion must be made in writing.").

relief without a motion.[52] Petitioners must comply with Rule 7 and file a motion before I consider the relief in the Proposed Order.[53]

Rule 7 exists so that parties can explain to the Court why the relief they seek is warranted.[54] Petitioners seek a Rule 41(a)(2) dismissal on the basis that Count I is moot given their dissolution of the Corporations.[55] Rule 41(a)(2) dictates "a voluntary dismissal will not be granted as a matter of right, rather, it is directed to

---

[52] *Bay Cap. Fin., L.L.C. v. Barnes & Noble Educ., Inc.*, 2020 WL 1527784, at *12 n.121 (Del. Ch. Mar. 30, 2020) ("Plaintiff argues that it is entitled to a mootness fee in connection with this amendment. But Plaintiff failed to move for mootness fees. Thus, this decision does not address the merits of Plaintiff's argument."), *aff'd*, 249 A.3d 800, *3 (Del. 2021) (TABLE) (affirming the trial court's refusal to consider a request for a mootness fee where "Plaintiff failed to move for mootness fees" and only raised the argument in its answering brief in opposition to defendant's motion for summary judgment); *In re Lordstown Motors Corp.*, 2023 WL 1974708, at *1 (Del. Ch. Feb. 13, 2023) ("Requests for judicial action are to be made by motion.") (quoting *Binns v. Johnson*, C.A. No. 2022-0505-PAF, at 2 (Del. Ch. Feb. 6, 2023) (ORDER); *Binns*, C.A. No. 2022-0505-PAF, at 2 (denying a request to strike portions of a status report when the relief was not sought through a motion, but through a letter); *Cowan v. Furlow*, 2022 WL 3269982, at *2 (Del. Ch. Aug. 11, 2022) ("[A]ny request for relief must be made by motion, not letter, under Court of Chancery Rule 7(b)."); *see* Guidelines for Persons Litigating in the Court of Chancery § C(3)(c)(ii) (2024) ("Unless requested by the Court, letters should not be used to request substantive relief.").

[53] Petitioners should also provide proof of service of the Amended Petition on the Corporations. *See* D.I. 50; D.I. 3; D.I. 4.

[54] *Int'l. Ass'n of Firefighters, Local 1589 v. City of Wilmington*, 2023 WL 2309978, at *6 (Del.Ch. Feb. 28, 2023) ("Requests for substantive judicial action by this court are not to be made by letter.").

[55] D.I. 65 ¶ 1.

the sound discretion of the Court."[56]  But Petitioners failed to provide any moving papers or affidavits:  the letter simply states certificates of dissolution were filed and that "Petitioners believe that dissolution of the Corporations moots Count I," and attaches those certificates and the Proposed Order's unverified "whereas" clauses the Court has no basis to adopt.[57]  In another wrinkle, Petitioners contend the Bench Ruling and Order resolved Count II, but those rulings granted only partial relief on Count II.[58]  The Court will not enter the Proposed Order in its current form or as submitted.  At a minimum, Petitioners must file a Rule 7 motion and a proposed order the Court can adopt.

---

[56] *In re Marriott Hotel Props. II Ltd. P'ship Unitholders Litig.*, 1997 WL 589028, at *6 (Del. Ch. Sept. 17, 1997) (citing *ASX Inv. Corp. v. Newton*, 1994 WL 240697, at *2 (Del. Ch. May 18, 1994)); *Avaya, Inc. v. Charter Commc'ns Holding Co., LLC*, 2016 WL 381261, at *1 (Del. Ch. Jan. 29, 2016) ("The decision to allow a voluntary dismissal is committed to the Court's discretion."); *Paragon Techs., Inc. v. Ocean Power Techs., Inc.*, 2024 WL 4235638, at *1 (Del. Ch. Sept. 19, 2024) ("Whether to permit voluntary dismissal under Rule 41(a)(2) is a discretionary matter for this court.").

[57] D.I. 64; D.I. 65.

[58] Neither the Bench Ruling nor the Order granted Petitioners' requests for a declaration that "[n]either Respondent nor M7Tec can prevent the Corporations, or the successors via judicial dissolution and distribution, from using the Alleged M7 IP" and that "[o]ther than the unrestricted right to use the Corporations' IP and the Alleged M7 IP, there are no other assets of the Corporations to distribute (except $100 cash, which can be returned to Respondent)."  AP ¶¶ 43(c), (d); Hr'g Tr. 11:6–13; Order ¶¶ 2–3 ("Paragraphs 43(a) and (b) of the First Amended Verified Petition are deemed admitted by Respondents.  The Motion is DENIED as to … the remainder of Count II.").

### III.    Conclusion

Petitioners' request for a Rule 41(a)(2) voluntary dismissal must be presented by motion.  It is held in abeyance.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*